**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| ZAJAC, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket no. 2:15-cv-507-GZS |
| | ) | |
| WALKER INDUSTRIAL and TURCK, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTIONS TO DISMISS**

Before the Court are (i) Defendant Walker Industrial's Motion to Dismiss with Incorporated Memorandum of Law (ECF No. 16) (the "Walker Motion"), (ii) Plaintiff's Motion to Dismiss Defendant TURCK, Inc.'s Counterclaims with Incorporated Memorandum of Law (ECF No. 22) (the "Zajac Motion"), and (iii) Defendant TURCK, Inc.'s Motion to Dismiss or, in the Alternative, to Transfer Venue with Incorporated Memorandum of Law (ECF No. 27) (the "Turck Motion"). For the reasons explained herein, the Court GRANTS IN PART AND DENIES IN PART the Walker Motion, DENIES the Zajac Motion, and DENIES the Turck Motion.


I.      **LEGAL STANDARD**

The Federal Rules of Civil Procedure require only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief; and a demand for the relief sought[.]" Fed. R. Civ. P. 8(a)(1)-(3). The Court assumes the truth of the complaint's well-pleaded facts and draws all reasonable inferences in plaintiff's favor. Schatz v. Republican State Leadership Comm., 669

F.3d 50, 55 (1st Cir. 2012).   Under Rule 12(b)(6), the Court "may consider only facts and documents that are part of or incorporated into the complaint." United Auto., Aero., Agric. Impl. Workers of Am. Int'l Union v. Fortuno, 633 F.3d 37, 39 (1st Cir. 2011) (internal citations omitted).

A viable complaint need not proffer "heightened fact pleading of specifics," but in order to survive a motion to dismiss it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).   In considering a motion to dismiss, the Court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).   Plaintiff must include enough facts supporting a claim for relief that "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.   "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)); see also Iqbal, 556 U.S. at 678 (stating that the Court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements").   At this point in the litigation, "the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon which relief can be granted." Bodman v. Me., Dept. of Health & Human Servs., 720 F. Supp. 2d 115, 121 (D. Me. 2010).

## II.    BACKGROUND

### A. Factual Background

The following summary of background information is drawn from the allegations made by Plaintiff Zajac, LLC ("Zajac" or "Plaintiff") in its complaint, originally filed in the Superior Court

of York County, Maine (ECF No. 1-1) (the "Complaint").  The Court accepts the allegations of Plaintiff for the purposes of its review of the legal adequacy of the claims made in the Complaint.

Zajac, a limited liability company organized under the laws of the State of Maine, is in the business of providing installation services for customers in certain industries.  (Compl. ¶¶ 2 & 6.) Walker Industrial ("Walker") is a Connecticut corporation and a regional distributor for TURCK, Inc. ("Turck" and, together with Walker, "Defendants"), a Minnesota corporation.  (Compl. ¶¶ 3-4 & 10.)  In 2014, Zajac contracted with a customer to design, manufacture, and install skid-mounted equipment and piping in a facility in Vermont.  (Compl. ¶ 7.)  The customer required that the installed equipment include "fire rated" electrical wiring exposed in trays in the skids, a feature that is also known as "tray rated."  (Compl. ¶ 8.)  Zajac contacted Walker about purchasing wire sets and cordsets for use in the skid equipment.  (Compl. ¶ 10.)  Walker directed Zajac to contact Turck directly.  (Compl. ¶ 11.)

In about May of 2014, Zajac's fabrication manager exchanged emails with Chris Hawj of Turck.  (Compl. ¶ 12.)  Zajac informed both Turck and Walker that it needed tray rated cordsets, and the correspondence between Zajac and Hawj reflected that Turck knew that Zajac needed tray rated products.  (Compl. ¶¶ 12 & 42.)  Walker provided Zajac with a printed Turck catalog that described a certain model of cordset (the "Cordsets") as "tray rated."  (Compl. ¶ 14.)  Turck's website also described the Cordsets as "tray rated."  (Compl. ¶ 15.)

With information provided by and through Turck and Walker, Zajac decided to purchase the Cordsets, and it placed the first of several orders for the Cordsets through Walker, as Turck's regional distributor.  (Compl. ¶¶ 13 & 16.)  There were no terms and conditions attached to Zajac's purchase order, or to the shipping invoice Zajac received from Walker.  (Compl. ¶ 16.)  Zajac then proceeded to use the Cordsets in its work for a customer.  (Compl. ¶¶ 17-18.)

In about March of 2015, Zajac discovered that Turck's website no longer described the Cordsets as "tray rated."  (Compl. ¶ 19.)  In discussions with Walker and Turck, Zajac confirmed that the Cordsets are not tray rated.  (Id.)  Despite Zajac's demand, Turck and Walker have not paid for the cost of replacing the Cordsets, which Zajac estimates will amount to approximately $128,000.  (Compl. ¶¶ 21-22.)

**B.  Litigation**

Zajac filed the Complaint in York County Superior Court, asserting claims against both Defendants in six separate counts: a claim for declaratory judgment (Count I), a claim for breach of express warranty (Count II), a claim for breach of implied warranty of merchantability (Count III), a claim for breach of implied warranty of fitness for a particular purpose (Count IV), a claim for violation of the Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. § 1211 et seq. (the "MUDTPA") (Count V), and a claim for false advertising[1] (Count VI).  Defendant Turck filed an answer and counterclaim in response to the filing of the Complaint (ECF No. 15), making counterclaims against Zajac for breach of contract (Count I) and for indemnification (Count II).

Defendant Walker has filed a motion to dismiss the Complaint (ECF No. 16).  Walker argues that Zajac has failed to state a claim against Walker for which relief can be granted as to each of the six counts of the Complaint.  Plaintiff has filed a motion to dismiss Turck's counterclaims (ECF No. 22).  Defendant Turck has filed a motion to dismiss the Complaint or, in the alternative, to transfer venue to the United States District Court for the District of Minnesota (ECF No. 27), arguing that the parties are bound by a forum selection clause providing certain

---

[1] The Complaint does not specifically state the legal authority under which Plaintiff alleges that Defendants have violated the law, except for a reference to the "Lanham Act."  Based on the allegations included in the Complaint, and construing this claim permissively for Plaintiff, it appears that Plaintiff seeks to make a claim under 15 U.S.C. § 1125(a)(1)(B) of the Lanham Act, which prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods . . . ."

federal and state courts located in Minnesota as the exclusive forum for the present dispute.  In addition, the parties disagree on the law applicable to this dispute.  Plaintiff asserts that the laws of the State of Maine apply, while Defendants argue that an enforceable choice of law provision requires the application of the laws of Minnesota.  The Court considers each of these issues below.

## III.    DISCUSSION

The Court will first consider the threshold venue question raised by Turck.  Concluding that, based on the present record, venue is proper in this District, the Court denies the Turck Motion and proceeds to the arguments that have been made on the individual claims.  In their motions, Walker and Zajac have moved for the dismissal of each filed claim and counterclaim.  With the exception of the Walker Motion as to the dismissal of Counts I and VI of the Complaint, which is granted, the Walker Motion as to Zajac's other claims, and the Zajac Motion, are denied.

### A.  Turck's Argument for Dismissal or Transfer Based on Venue

Turck makes an argument which lies at the threshold of the Court's analysis of the Complaint.  Turck asserts that the parties are bound by a valid and enforceable forum selection clause providing for the federal and state courts located in Hennepin County, Minnesota, as the exclusive forum for disputes in connection with Zajac's purchase of the Cordsets.  According to Turck, venue is therefore improper in the District of Maine, and this Court should either dismiss the Complaint or transfer venue to the District of Minnesota.  If Turck's argument was correct, then it would not be appropriate for this Court to rule on the arguments made in the Walker Motion or the Zajac Motion, and the need for further consideration of this case would be obviated.  However, Turck is mistaken.  Based on the record before the Court, the forum selection clause is not enforceable, and venue in this Court remains proper.

Upon a motion to dismiss, the Court looks to the allegations in the Complaint, and assumes the truth of the well-pleaded facts while drawing all reasonable inferences that support the plaintiff's stated theory of liability.  Carter's of New Bedford, Inc. v. Nike, Inc., 790 F.3d 289, 291 (1st Cir. 2015).  The Court can also consider an underlying document or documents that are expressly linked to the dispute in the Complaint.  Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to . . . a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").  As the allegations in this dispute arise out of the sale of the Cordsets to Zajac, documents purported to contain the terms and conditions of such sale, if presented to the Court and not challenged by a party as inauthentic, can be considered.

Zajac has alleged that the purchase order and the shipping invoice for the Cordsets did not contain any terms or conditions, and Turck has not argued that a forum selection clause was included in any transaction document by which Zajac affirmatively agreed to certain terms and conditions in connection with its purchase of the Cordsets.  Instead, Turck argues that the forum selection clause arose out of the "terms of use" section of Turck's website.  Plaintiff has alleged that its review of product information about the Cordsets on Turck's website was one of the sources of the mistaken assertion by Turck and/or Walker that the Cordsets were tray rated.  Turck directs the Court's attention to the specific allegation in the Complaint that the affirmative representation on Turck's website that the Cordsets were tray rated "became part of the bargain."  (Compl. ¶ 32.) According to Turck, when Zajac used Turck's website to learn about the Cordsets, and when it allegedly relied upon the website's description of the Cordsets in making the decision to order the

product through Walker, the terms of use of the website were incorporated into Zajac's agreement to purchase the Cordsets and became applicable to the transaction.

Ordinarily, a party arguing that a forum selection clause is inapplicable bears a heavy burden of proof. Carter's of Bedford, 790 F.3d at 292 (quoting Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 17, 92 S. Ct. 1907 (1972)). However, the Bremen analysis applies where a party seeks to strike a forum selection clause that, on its face, was an express term of a contract. Here, Zajac argues that the forum selection clause was never a term of its agreement to purchase the Cordsets, whether that agreement was with Walker, Turck, or both of them.[2]

While the Complaint alleges that Zajac viewed the page on the Turck website providing specifications and descriptions for the Cordsets, that page of the website did not include any information about terms of use of the website, or make any express statement regarding the terms under which the Cordsets could be purchased. (Compl. Ex. A (ECF No. 1-2) at PageID # 12.) Turck has provided the Court with a declaration by Lance Bredeson, a Division Vice President at Turck. (ECF No. 28.) Bredeson declares that an attached print-out of a page from Turck's website is a copy of the "terms of use" that appeared on Turck's website at the time that Plaintiff allegedly consulted the website for product information. (ECF No. 28-2.) According to Bredeson, the terms of use page could be accessed by clicking on a small link at the bottom of Turck's website entitled "Reference." (ECF No. 28-3.) Users were not prompted to read or affirmatively agree to the terms of use.[3] Rather, as demonstrated by Defendant Turck's own characterization of its website, the terms of use were merely available on a page of the website hyperlinked to the homepage, a

_____

[2] Zajac argues that no contractual relationship existed between Zajac and Turck. (Pl.'s Opp. Def. Turck, Inc.'s Mot. Dismiss (ECF No. 31) at PageID #s 222-23.) It is not necessary for the Court to determine whether such relationship existed in order to decide the pending motions, and the Court therefore reserves this issue for later resolution on a more developed record.

[3] Such an affirmative-consent click-box arrangement is often called a "clickwrap" agreement. See Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 22 n.4 (2d Cir. 2002).

"browsewrap" approach to forming an agreement between a website operator and a user.  See Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 429 (2d Cir. 2004).

Merely including terms of use on a website is not sufficient to incorporate those terms into legal relations between the website operator and the user, even where the user purchases an item or downloads software from the operator's website.  Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 29-30 (2d Cir. 2002) ("[A] consumer's clicking on a download button does not communicate assent to contractual terms if the offer did not make clear to the consumer that clicking on the download button would signify assent to those terms").  A user's actual knowledge of the terms of a browsewrap agreement where the user had "actual notice of the agreement" provides a strong basis for enforcement of the terms.  Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1176 (9th Cir. 2014).  However, there is no evidence that Zajac's employees or agents actually read or otherwise had knowledge of the contents of the "terms of use" page.  As an alternative basis for finding browsewrap terms to be enforceable, courts have held that constructive notice can be established through the conspicuousness and placement of the link to the terms of use, as well as the website's general design.  Id. at 1177.

Prior decisions involving whether to enforce terms of use included on a website as a browsewrap agreement demonstrate the difficulty website operators have faced in seeking the enforcement of these terms against users.  In Nguyen, the Ninth Circuit declined to enforce a browsewrap agreement where the plaintiff had transacted with the defendant through the defendant's website, which included a link titled "Terms of Use" on every page of the website, including in close proximity to the buttons a user must click in order to complete a website-based transaction with the defendant.  Id. at 1178-79.  The court concluded that "in keeping with courts' traditional reluctance to enforce browsewrap agreements against individual consumers, we

therefore hold that where a website makes its terms of use available via a conspicuous hyperlink on every page of the website but otherwise provides no notice to users nor prompts them to take any affirmative action to demonstrate assent, even close proximity of the hyperlink to relevant buttons users must click on . . . is insufficient to give rise to constructive notice." Id.

This analysis contrasts with the fact pattern in Small Justice LLC v. Xcentric Ventures LLC, where the court found that the constructive notice standard was met for a browsewrap agreement where pages on the website viewed by the user "prominently featured a portion of the terms in the center of the screen," and several of the pages accessed by the user contained color-contrasting blue links to the terms of service above the link a user would need to click to proceed to the next page on the website. 99 F. Supp. 3d 190, 197 (D. Mass. 2015). This decision illustrates the type of measures a website operator must take to put users on constructive notice of the site's contents. While browsewrap agreements may be enforced against users based on constructive notice of their terms, the terms must be made conspicuous by features of the website that interpose the terms (or at a minimum, a visually distinctive link to the terms) into the experience of the user in accessing and utilizing the website.

In this case, and based on the record currently before the Court, including the exhibits attached to the declaration of Mr. Bredeson of Turck, it does not appear that Zajac was on constructive notice of the terms of use of the Turck website. The applicable link on Turck's homepage was inconspicuously placed in small font at the bottom of the homepage, located amongst several other small links. Notably, the link was not named "terms of use" or any synonymous phrase, but was rather titled "Reference." It is plain to the Court that the word "Reference" does not intuitively indicate to a user that clicking on that particular link will reveal terms of use. The Court is aware of nothing in the design of the website or the content of the

product-specific pages that would provide a more evident signal of the terms of use posted within the website.  Further, according to the Complaint, Plaintiff did not enter into a product purchase transaction with Turck or Walker by utilizing Turck's website.  In <u>Nguyen</u>, even an act of online purchase by the plaintiff that involved clicking website buttons in close proximity to a "Terms of Use" link did not give rise to a finding that the plaintiff had constructive knowledge of the terms of use.  763 F.3d at 1178-79.  Here, the link was not given a title intuitively related to the terms of use contents, the link was not proximate to buttons a user would click to initiate a purchase, and no purchase was made through Turck's website.

On this limited record, where there is no assertion that Plaintiff had actual knowledge of the terms of use on Turck's website, and where the information available for the Court to consider does not establish that Plaintiff had constructive knowledge of the terms of use, the Court cannot conclude that the parties have agreed to another forum as the exclusive venue for the present dispute.[4]  The Turck Motion is therefore DENIED.

**B.  Choice of Law**

Both Walker and Turck argue that a choice of law provision, selecting Minnesota law to govern any dispute related to Zajac's purchase of the Cordsets, was incorporated into the terms of that purchase.  Defendants argue that a provision included in the "terms of use" on Turck's website, as well as a provision in the "warranty terms and conditions" section of Turck's printed catalog, is each sufficient to support the conclusion that a Minnesota choice of law provision applies to Zajac's purchase of the Cordsets.  Plaintiff, on the other hand, maintains that neither the Turck

---

[4] Turck's argument in favor of a transfer of venue to the United States District Court for the District of Minnesota fails for the same reasons as its argument in favor of dismissal.  Turck asserts that Plaintiff's choice of venue in this District deserves no weight where the parties have chosen an alternative mandatory forum.  However, as explained above, this record simply does not support the conclusion that Turck and Zajac were parties to a contract that included, as a term, the disputed forum selection clause.  The Court's denial of the Turck Motion therefore applies with equal force to Turck's alternate argument that this Court should transfer the case to the District of Minnesota.

website nor the Turck catalog can be considered as a source of terms that were incorporated into its purchase of the Cordsets. With no choice of law provision for the purchase, Zajac argues that the laws of Maine should be applied to this case.

It is not necessary, at this point in the litigation, for the Court to decide whether Maine or Minnesota law will govern this dispute. The Court's rulings on each pending motion would not change as a result. Regarding Plaintiff's warranty claims (Counts II-IV), both Minnesota and Maine have codified the applicable UCC provisions on express warranties, the implied warranty of merchantability, and the implied warranty of fitness for a particular purpose. Given the allegations in the Complaint, at this early juncture in the litigation, each of the warranty claims remains viable under the laws of both states, even accounting for the case interpreting Minnesota law, Masepohl v. American Tobacco Co., 974 F. Supp. 1245 (D. Minn. 1997), which was cited by Defendant Walker. (Def. Walker Indus. Mot. Dismiss (ECF No. 16) at PageID # 93.)

The Court notes that if the choice of law clauses found on the Turck website and in the Turck catalog are not enforceable against Zajac, then the Court would apply the choice of law rules set forth in the laws of the State of Maine. Auto Europe, LLC v. Connecticut Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003). In that circumstance, and based on the limited record now before the Court, the Court anticipates that Maine law would apply in this case.[5]

---

[5] While a review of this limited record suggests that Maine law would likely apply under Maine's "significant relationship" test, which applies in similar form in both contract and torts cases, see State Farm Mut. Auto. Ins. Co. v. Koshy, 995 A.2d 651, 660 (Me. 2010) (citing Baybutt Constr. Corp. v. Commercial Union Ins. Co., 455 A.2d 914, 917-19 (Me. 1983), for contracts-based analysis of the significant relationship test), the Court reiterates that it need not presently decide this issue. Instead, the Court believes any choice of law question is best reserved and resolved on a more developed record.

### C. Walker's Arguments on Plaintiff's Claims

#### 1. Declaratory Judgment (Count I)

Walker argues that Plaintiff's claim for declaratory judgment, specifically a declaration that Defendants "are responsible for the cost of replacing the [Cordsets]" (Compl. ¶ 28), is superfluous. (Def. Walker Indus.'s Mot. Dismiss (ECF No. 16) at PageID # 101.) Plaintiff counters that as there is an active dispute over Defendants' liability, declaratory judgment is an appropriate remedy alongside whatever other remedies Plaintiff may be awarded under its other claims. (Pl.'s Opp. Def. Walker Indus.'s Mot. Dismiss (ECF No. 21) at PageID # 141.)

While the Declaratory Judgment Act "empowers a federal court to grant declaratory relief in a case of actual controversy," the courts "retain substantial discretion in deciding whether to grant declaratory relief." Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995). This discretion flows from the fact that the Declaratory Judgment Act "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies." El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992).

Walker is correct that the claim is, on its face, entirely duplicative of Plaintiff's other claims. Contrary to Plaintiff's argument, it does not seek a declaratory remedy from the Court that would clarify or advance the resolution of the dispute. Plaintiff quotes Curran v. Camden Nat'l Corp., 477 F. Supp. 2d 247 (D. Me. 2007), for the proposition that declaratory judgment is appropriate to declare the rights and legal relations of an interested party to an actual controversy. Id. at 265. The quotation provided, which is, in turn, taken directly from the Declaratory Judgment Act, stands merely for the proposition that declaratory judgment may be appropriate. In this case, upon a careful examination of the Complaint, such a claim is superfluous. See McLaughlin v.

Denharco, Inc., 129 F. Supp. 2d 32, 40 (D. Me. 2001) (granting summary judgment for the defendants on the plaintiff's Maine Declaratory Judgment Act claim because "[plaintiff] asserts substantive claims for damages that will determine the rights and liabilities of the parties without resorting to [the declaratory judgment claim]").

Because Walker has successfully argued that Plaintiff's claim for declaratory judgment is merely duplicative of its other claims, the Court will exercise its discretion and GRANT Walker's motion to dismiss Count I as to both Defendants.  As explained below, Plaintiff will be able to seek the substantive judgments and relief it sets forth in the Complaint through its claims in Counts II-V.

### 2.  Warranty Claims (Counts II-IV)

Walker contends that, as a regional distributor for Turck, it is not liable for any express or implied warranties over the Cordsets.  As an initial matter, the Court addresses Walker's argument that all the warranties are limited by language included in the terms of use on Turck's website, as well as the "warranty terms and conditions" section at the end of Turck's catalog.  For the same reasons explained above in connection with Defendants' arguments that the Court should enforce the forum selection clause and choice of law clause, the Court cannot, at this juncture, conclude that limitation of warranty language was incorporated into the terms of Zajac's purchase of the Cordsets.  Rather, drawing all reasonable inferences in Zajac's favor, Zajac may ultimately establish that the limitation of warranties found on the Turck website is not applicable Zajac's purchase.

The Court next evaluates the claim-specific arguments made by Walker as to each of Counts II-IV.

Walker argues that the allegations in the Complaint concerning Count II, breach of express warranty, only include information about the Cordsets found in sources of information prepared by Turck: the Turck website and the Turck catalog.  (Def. Walker Indus.'s Reply Zajac, LLC's Opp. Mot. Dismiss (ECF No. 29) at PageID #s 191-92.)  As for breach of implied warranties, Walker advocates that Minnesota law be applied to the dispute and argues that implied warranties do not apply under Minnesota law to a distributor who leaves a product unaltered.  (Def. Walker Indus.'s Mot. Dismiss (ECF No. 16) at PageID #s 93-94.)  Regarding the implied warranty of merchantability, Walker asserts that Plaintiff has not adequately pleaded the ordinary purpose of the Cordsets.  (Id. at PageID #s 94-95.)  Finally, Walker argues that the claim for breach of implied warranty of fitness for a particular purpose also fails because, according to Walker, Plaintiff has not alleged that Walker had reason to know of the particular purpose for which Plaintiff needed to acquire the Cordsets, nor do the allegations indicate that Walker would have known that Plaintiff was relying on Walker's skill or judgment to select a suitable product for Plaintiff's needs.  (Id. at PageID #s 95-96.)

Contrary to Walker's characterization of the Complaint, the Court is satisfied that Plaintiff has stated a claim for breach of each of these warranties.

### a.  Express Warranty (Count II)

Regarding Count II, Zajac's claim for breach of an express warranty, the Complaint meets the minimum standard for stating a claim that can survive a motion to dismiss.  Under the law of both Minnesota and Maine, a seller creates an express warranty by an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain" or a "description of the goods which is made part of the basis of the bargain." M.S.A. § 336.2-313; 11 M.R.S.A. § 2-313.  Zajac alleges that Walker participated in the process

by which Zajac obtained information about the Cordsets and purchased the Cordsets, including by providing Zajac with a copy of the Turck catalog, facilitating discussions between Zajac and Turck,[6] and by taking and acting to fulfill Zajac's order for the Cordsets.  (Compl. ¶¶ 11, 13-14 & 16.)

While Walker is correct that Zajac has not pleaded with great particularity the specific instances in which Walker conveyed information to Zajac that the Cordsets were tray rated (other than by providing a catalog that described the Cordsets as tray rated), the pleadings relevant to Count II are not merely conclusory statements.  Rather, the allegations made against Walker, if supported by specific and credible evidence, could provide the basis for a successful express warranty action.  Walker directs the Court's attention to Kladivo v. Sportsstuff, Inc., 2008 WL 4933951 (D. Minn. Sept. 2, 2008), in which the court ruled for the product distributor defendant on an express warranty claim where the plaintiff "pointed to no evidence in the record showing express statements or representations" by the distributor.  Id. at *4.  However, it is notable that the Kladivo court ruled for the defendant upon a motion for summary judgment.  Here, without the benefit of an evidentiary record on the purchase-and-sale process in which Zajac and Walker participated, it would be premature to conclude that Zajac cannot sustain this express warranty claim against Walker.

### b.  Implied Warranty of Merchantability (Count III)

Similarly, Walker's argument on the implied warranty of merchantability asks the Court to draw inferences that are unfavorable to Plaintiff, such as the inference that tray rating is not

---

[6] Amongst other allegations, the Complaint asserts that Zajac decided to purchase the Cordsets once it had "information provided by and through Turck and Walker."  (Compl. ¶ 13.)  While Walker argues that the more specific allegations in the Complaint demonstrate that any such information was provided by Turck, and not Walker, several allegations attribute a more direct role to Walker.  In addition, even the general allegation provides a predicate, at the motion to dismiss stage, for Zajac's express warranty claim against Walker.

necessary to the ordinary purpose of the Cordsets, which this Court plainly cannot do in deciding the Walker Motion.  Under the implied warranty of merchantability, goods must be "fit for the ordinary purposes for which such goods are used."  M.S.A. § 336.2-314(2)(c); 11 M.R.S.A. § 2-314(2)(c).  Zajac has alleged the parameters of a purchase transaction process and the agreement by which it bought the Cordsets and has asserted the elements of its warranty claims.  The limited record does not include detailed information on the terms of the agreement between Zajac and Walker, the nature and ordinary uses of the Cordsets, or the manner in which Walker performed under the purchase agreement.  Without a developed factual record, the Court cannot determine whether the allegations made in the Complaint against Walker can be supported by the evidence.  This point applies with equal force to Walker's broader argument that, under Minnesota law, Walker made no implied warranties to Zajac.  Accordingly, the Court concludes that Zajac has adequately pled a claim for implied warranty of merchantability as to Walker and denies the Walker Motion as to Count III.

### c.   Implied Warranty of Fitness for a Particular Purpose (Count IV)

Finally, the Court cannot say that Zajac's claim for breach of the implied warranty of fitness for a particular purpose must be dismissed.  The implied warranty of fitness for a particular purposes arises where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ."  M.S.A. § 336.2-315; 11 M.R.S.A. § 2-315.  Walker argues that Zajac has not alleged that Walker had reason to know that Zajac required tray rated cordsets, or that Zajac was relying upon Walker's skill or judgment to select a product that could meet this specification.  However, the Complaint does allege that "[t]hrough communications prior to purchase, Zajac informed Turck and Walker of its particular need for

16

tray-rated Cordsets." (Compl. ¶ 42.) Furthermore, Plaintiff asserts that it consulted Walker while seeking to determine what product to purchase, specifically alleges that Walker directed Zajac to a contact person at Turck, and generally alleges that Zajac relied upon "information provided by and through Turck and Walker." (Compl. ¶¶ 10-11 & 13.) These allegations set forth an adequate basis for a claim for breach of the implied warranty of fitness for a particular purpose. Only an evidentiary evaluation following discovery would enable the Court to rule on the merits of this claim.

Walker has advanced arguments on the express and implied warranty claims that may well prove meritorious if supported by a more fully developed factual record. However, Walker has not demonstrated that Plaintiff has failed to state claims for relief. On this limited record, Walker has stated claims against Walker in Counts II-IV, and the Walker Motion is DENIED as to those counts.

### 3.  MUDTPA Claims (Count V)

The MUDTPA permits a plaintiff to seek an injunctive remedy against a person who, "in the course of his business, vocation or occupation . . . [r]epresents that goods . . . have . . . characteristics . . . that they do not have . . . ; [r]epresents that goods . . . are of a particular standard . . . if they are of another; . . . [a]dvertises goods  . . . with intent not to sell them as advertised . . .; or [e]ngages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."  10 M.R.S.A. §§ 1212 (1)(E), (1)(G), (1)(I) & (1)(L).  Plaintiff has alleged in Count V that Defendants violated these sections of the MUDTPA when they "falsely advertis[ed] the Cordsets as 'tray rated' when they knew that they were not so rated." (Compl. ¶ 50.) Walker seeks the dismissal of Count V because Plaintiff has failed to state a warranty claim against Walker, and because Plaintiff has conceded in the Complaint that in March of 2015, the Turck

website no longer described the Cordsets as "tray rated."  (Def. Walker Indus.'s Mot. Dismiss (ECF No. 16) at PageID #s 102-03.)

Zajac correctly argues that Count V cannot be dismissed, because the Complaint does state a claim for violation of the MUDTPA.  As analyzed above in connection with Counts II-IV, Plaintiff has stated warranty claims against Walker, so the MUDTPA claim is not undermined by the dismissal of the warranty claims.  Further, while Zajac has specifically alleged that Turck's website did not describe the Cordsets as "tray rated" on a date in March of 2015, this allegation does not render the MUDTPA claim entirely moot.  The Complaint contains no allegation regarding whether there have been any references to the Cordsets as "tray rated" on the Turck website since March of 2015.  Further, Zajac has also alleged false advertising in the Turck catalog that Walker allegedly distributed to Zajac.  At this stage, it is premature to determine whether Plaintiff fails to sate a claim for injunctive relief under the MUDTPA.

Consequently, the Walker Motion is DENIED as to Count V.

**4.  Lanham Act Claim (Count VI)**

Finally, Plaintiff has asserted a claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). According to Plaintiff, the false representation that the Cordsets were tray rated caused Plaintiff to purchase and use the Cordsets, which has in turn harmed Plaintiff's business reputation and may result in lost sales.  (Pl.'s Opp. Def. Walker Indus.'s Mot. Dismiss (ECF No. 21) at PageID #s 141-42.)  Walker argues that Plaintiff has made no allegation in the Complaint which could bring Plaintiff within the "zone of interests" that is a prerequisite to a Lanham Act action.

On this point, Walker is correct.  As the Supreme Court has explained, "Identifying the interests protected by the Lanham Act . . . requires no guesswork, since the Act includes an unusual, and extraordinarily helpful, detailed statement of the statute's purposes."  Lexmark. Int'l,

18

<u>Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377, 1389, 188 L. Ed. 2d 392 (2014) (internal quotation omitted).  Applying the statutory statement of purposes to the types of Lanham Act actions, the Court elaborated: "a typical false-advertising case will implicate only the [Lanham] Act's goal of protecting persons engaged in commerce within the control of Congress against unfair competition." <u>Id.</u> (internal quotation omitted).  Plaintiff seeks to link its claim to the concept of "competition" by arguing that it has been competitively disadvantaged, and its business reputation threatened, because it used the Cordsets in work for a Zajac customer.  However, the law is clear that the concept of "unfair competition" cannot be stretched to encompass all business activities, or all transactions where the purchaser is an operating business itself.  <u>See id.</u> at 1390 ("Even a business misled by a supplier into purchasing an inferior product is, like consumers generally, not under the [Lanham] Act's aegis.").

While Plaintiff has set forth allegations that its commercial stature has been harmed by its purchase and use of the Cordsets, this harm, to the extent it exists, has resulted from Zajac's relationship to Turck and Walker as a consumer.  The Supreme Court has stated unequivocally that while consumers are a beneficiary of false advertising claims under the Lanham Act, they have no standing to bring this cause of action themselves.  <u>POM Wonderful LLC v. Coca-Cola Co.</u>, 134 S. Ct. 2228, 2234, 189 L. Ed. 2d 141 (2014) ("Though in the end consumers also benefit from the [Lanham] Act's proper enforcement, the [misleading advertising or labeling] cause of action is for competitors, not consumers.").

Thus, Plaintiff has failed to plead the elements of a cause of action for unfair competition through false advertising, and Count VI of the Complaint is DISMISSED as to both Defendants.

### D.  Plaintiff's Motion to Dismiss

Plaintiff seeks the dismissal of Turck's counterclaims for breach of contract and indemnification, as set forth in Defendant Turck, Inc.'s Answer and Counterclaim (ECF No. 15). According to Plaintiff, there is no allegation that a contractual relationship exists or ever existed between Zajac and Turck, and that in any case no terms from Turck's website terms of use or from the warranty section of the Turck catalog were incorporated into the terms of Zajac's purchase of the Cordsets.

While Plaintiff has successfully argued that the record does not support this Court enforcing the "terms of use" on Turck's website or the warranty section of the Turck catalog at this stage in the litigation, it would also be premature to dismiss Turck's counterclaims before the parties have had the opportunity to develop and present evidence on the existence, parties, and terms of the contract (or contracts) under which the Cordsets were purchased.

The lack of evidence demonstrating Zajac's actual or constructive knowledge of the website terms of use or the catalog warranty section can be used defensively by Zajac, as it did in arguing against enforcement of the forum selection clause and a resultant dismissal of the Complaint.  However, this same lack of evidence, at the motion to dismiss stage, cannot also be used offensively by Zajac to obtain the dismissal of claims that can only be assessed on their merits with the benefit of discovery.

The Zajac Motion is DENIED.


### IV.    CONCLUSION

For the reasons just stated, the Court GRANTS the Walker Motion (ECF No. 16) as to Counts I and VI of the Complaint and DENIES the Walker Motion as to Counts II-V of the

Complaint, DENIES the Zajac Motion (ECF No. 22), and DENIES the Turck Motion (ECF No. 27).

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 21st day of July, 2016.